GOLIGHT, INC., Plaintiff–Appellee,

v.

WAL–MART STORES, INC.,
Defendant/Third Party
Plaintiff–Appellant,

and

North Arkansas Wholesale Company,
Inc., Defendant,

v.

Innovative International (H.K.) Ltd.,
Third Party Defendant–
Appellee.

No. 02–1608.

United States Court of Appeals,
Federal Circuit.

Jan. 20, 2004.

David L. DeBruin, Michael Best & Friedrich LLP, of Milwaukee, WI, argued for plaintiff-appellee. With him on the brief was Matthew S. MacLean.

William D. Coston, Venable, Baetjer, Howard & Civiletti, LLP, of Washington, DC, argued for defendant/third party plaintiff-appellant. With him on the brief was Kevin B. Collins.

Before SCHALL, Circuit Judge, ARCHER, Senior Circuit Judge, and PROST, Circuit Judge.

PROST, Circuit Judge.

Wal–Mart Stores, Inc. ("Wal–Mart") appeals the decision of the United States District Court for the District of Colorado after a bench trial entering a final judgment against Wal–Mart for infringement of United States Patent No. 5,673,989 ("the '989 patent") owned by Golight, Inc. ("Golight"). *Golight, Inc. v. Wal–Mart Stores, Inc.,* 216 F.Supp.2d 1175 (D.Colo.2002).

Because we find no errors of law by the district court or any clearly erroneous findings of fact, we affirm.

## BACKGROUND

The '989 patent is for a wireless, remote-controlled, portable search light invented by Gerald Gohl and Al Gebhardt. The idea for this invention originated from Gohl's experiences cattle ranching in Nebraska, where he used hand-held search lights to locate and assist calving animals in harsh blizzard conditions. Gohl determined that it would be advantageous under such conditions to have a portable search light that could be mounted on the outside of a vehicle and remotely controlled from either inside or outside the vehicle. To-

gether, Gohl and Gebhardt developed and patented the Golight, which is generally the subject of U.S. Patent No. 5,490,046 ("the '046 patent"), and then the wireless, remote-controlled Radio Ray, which is generally the subject of the '989 patent.

In 1997, Wal–Mart, through its Sam's Club stores, began selling a portable, wireless, remote-controlled search light. This search light was allegedly a low-end copy of the Radio Ray, being virtually identical in all relevant respects but for the "apparently arbitrary, and rather suspicious, placement of a plastic 'stop' piece which prevented" the search light from rotating through 360°. *Id.* at 1180. This stop piece restricted the Wal–Mart search light to rotating somewhere between 340° and 351°. Counsel for Golight sent Wal–Mart a cease and desist letter on December 11, 1998, indicating Golight's belief that Wal–Mart's device infringed the '989 patent. Golight then filed this lawsuit on February 14, 2000. After holding a three-day bench trial, the district court found that Wal–Mart infringed claim 11 of the '989 patent by importing portable search lights literally meeting each limitation of the claim, the claim was not invalid, Wal–Mart's infringement was willful, and Golight was entitled to damages of $464,280 plus its attorney fees.

On appeal, Wal–Mart challenges the district court's claim construction and argues that it is entitled to judgment of noninfringement, should we adopt its proposed claim construction. Should we affirm the district court's claim construction, Wal–Mart concedes infringement but argues that the district court should have found claim 11 invalid as obvious. Wal–Mart also challenges the district court's ruling that any infringement was willful, arguing that such a finding is based on clearly erroneous facts and was an abuse of the district court's discretion. With respect to

damages, Wal–Mart argues that the district court's selected royalty rate is unreasonable as a matter of law and is based on factual findings that are clearly erroneous.

We have jurisdiction to consider Wal–Mart's appeal under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Following a bench trial, we review the district court's judgment for clearly erroneous findings of fact and its conclusions of law *de novo*. *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1343–44 (Fed.Cir. 2002). "A finding is clearly erroneous when, despite some supporting evidence, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1328 (Fed.Cir.2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

### I. CLAIM CONSTRUCTION

Claim 11, the only claim of the '989 patent at issue, states as follows:

In a searchlight apparatus wherein a lamp unit is mounted in a housing having vertical drive means for tilting said lamp unit in a vertical direction and *horizontal drive means for rotating said lamp unit in a horizontal direction,* the improvement comprising:

a base support member on said housing;

attaching means on said base support member for releasably attaching said base support member to a substantially flat surface, said attaching means including a rubber boot on said base support member, and actuating means engageable with said boot for drawing said boot into vacuum-tight relation to said surface; and

wireless remote control means for controlling vertical and horizontal movement of said searchlight apparatus, said remote control means including a self-contained transmitter adapted to be carried by an operator of a motor vehicle wherein said drive means can be operated by wireless transmission both from within said vehicle and at remote distances from said vehicle without electrical connection between said drive means and said remote control means, and having an on/off switch and a four-way directional control switch, and a receiver mounted within said housing.

'989 patent, col. 8, ll. 33–55 (emphasis added). The only claim construction dispute in this case is whether the emphasized claim language implicitly requires the search light to be capable of rotating through 360°. Claim 11 has no such explicit limitation, unlike the other independent claims of the '989 patent, which recite "horizontal drive means for rotating said lamp unit in a horizontal direction through at least 360°." *See, e.g.,* '989 patent, col. 7, ll. 13–14. The district court concluded that "[c]laim 11 does not contain a 360 degree limitation." *Golight, Inc. v. Wal–Mart Stores, Inc.*, No. 00–Z–331 (MJW) (D.Colo. Oct. 24, 2000). Wal–Mart disagrees, arguing that the written description and prosecution history compel us to construe the claim as having an implicit 360° limitation.

■ Claim construction is a matter of law that we review *de novo*. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

### A

■ Wal–Mart first argues that the written description of the '989 patent requires that claim 11 be construed to include a limitation of rotation through 360°. Acknowledging that such a limitation does

not expressly appear in claim 11, Wal–Mart nevertheless contends that the scope of the claims cannot exceed what is supported by the written description of the patent; because the patentees only described a search light capable of rotation through 360°, the claims must be so limited. Wal–Mart also argues that the written description includes specific statements limiting the claimed invention to a device that rotates through 360°. In particular, Wal–Mart relies on the statement that

> [a] searchlight apparatus in accordance with the present invention includes a lamp unit mounted in a housing which has a motor-driven vertical drive mechanism for tilting the lamp unit in a vertical direction and a motor-driven horizontal drive mechanism for rotating the lamp unit in a horizontal direction through at least 360°.

'989 patent, col. 2, ll. 3–8.

 "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use 'to particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed.Cir.2001) (quoting 35 U.S.C. § 112, ¶ 2). While claims must be construed in light of the specification, *Markman*, 52 F.3d at 979, limitations from the specification are not to be read into the claims, *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir.1998), for "[i]t is the *claims* that measure the invention," *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir.1985). The written description may, however, restrict the scope of the claims if "the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in

the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed.Cir.2002).

We see no clear definition or disavowal of claim scope in the written description of the '989 patent that would limit claim 11 to horizontal rotation through 360°. While it is true that the patentees describe their invention as having the ability to rotate through 360°, this particular advantage is but one feature of the invented search light. The written description describes other significant features as well, such as the use of a particular wireless remote control and differing mechanisms for attaching the search light to the roof of a vehicle. The patentees were not required to include within each of their claims all of these advantages or features described as significant or important in the written description. *See E–Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed.Cir. 2003) ("An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them."); *SRI Int'l*, 775 F.2d at 1121 ("If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims.").

Nor do we find the disclosure of a single embodiment to be limiting in this case. An applicant is not necessarily required by 35 U.S.C. § 112, ¶ 1 to describe more embodiments than its preferred one, and we have outright rejected the notion that disclosure of a single embodiment necessarily limits the claims. *See Teleflex*, 299 F.3d at 1327 (stating that "the number of embodiments disclosed in the specification is not determinative of the meaning of disputed

claim terms"). Moreover, "[a]bsent a clear disclaimer of particular subject matter, the fact that the inventor anticipated that the invention may be used in a particular manner does not limit the scope to that narrow context." *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1301 (Fed.Cir.2003).

Thus, we are unpersuaded by Wal–Mart's contention that the written description compels us to import into claim 11 the requirement of rotation through 360°.

## B

With respect to the prosecution history, Wal–Mart first argues that the patentees acted as their own lexicographers, giving the claim term "rotating" a special definition during prosecution. Wal–Mart relies in particular on the following statement in the prosecution history:

> [T]he pivotal movement in Lipman is through a restricted angle and not rotation in the true sense of the word. In this relation, the claims in issue have been amended to recite rotation through at least 360° and avoid an incidental disclosure of rotation which could be imputed to Lipman.

According to Wal–Mart, this statement applies to all of the claims, including claim 11 (then pending as claim 16), and it shows the patentees' intent to specifically define the term "rotating" to require 360° of rotation. We disagree.

■ "Generally speaking, we indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed.Cir.2002). However, "an inventor may choose to be his own lexicographer if he defines the specific terms used to describe the invention 'with reasonable clarity, deliberateness, and precision.'" *Teleflex*, 299 F.3d at 1325 (quoting *In re Paulsen*, 30 F.3d 1475, 1480 (Fed.Cir.1994)). "Such a definition may

appear in the written description or in the prosecution history." *Teleflex*, 299 F.3d at 1325 (citations omitted). "[T]he prosecution history may demonstrate that the patentee intended to deviate from a term's ordinary and accustomed meaning, i.e., if it shows the applicant characterized the invention using words or expressions of manifest exclusion or restriction during the administrative proceedings before the Patent and Trademark Office." *Id.* at 1326; *see also Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1328 (Fed.Cir.2003) ("In the course of prosecuting a patent application, a patentee may redefine a claim term.").

■ Here, we find no clear or express statement by the patentees giving "rotating" a special meaning. The statements in the prosecution history relied on by Wal–Mart, while arguably subject to the interpretation Wal–Mart gives them, can also be reasonably understood as applying only to those claims (such as issued claim 5) that explicitly recite that rotation must be "through greater than 360°." Claim 11 is not one of those claims. Because the statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary meaning of the term "rotating." *See Cordis Corp. v. Medtronic Ave, Inc.*, 339 F.3d 1352, 1359 (Fed.Cir.2003) (concluding that a statement made during prosecution "is amenable to multiple reasonable interpretations and it therefore does not constitute a clear and unmistakable surrender").

■ Wal–Mart argues that, even if the patentees did not explicitly redefine the term "rotating," they repeatedly stated during prosecution that their invention was different from the prior art because it rotated horizontally through 360° and the patentees must be held to those representations. Wal–Mart thus raises the doc-

trine of prosecution disclaimer: "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed.Cir.2003).

Wal–Mart focuses in particular on the patentees' statements in response to the Examiner's third rejection. The patentees stated in their response that the prior art Lipman reference clearly "would not be rotatable so as to be able to sweep through 360° or greater as achieved by applicants' invention" and that "the claims in issue have been amended to recite rotation through at least 360° and avoid an incidental disclosure of rotation which could be imputed to Lipman." The patentees further argued:

> Claims 6 and 9 to 16 [which issued as claim 11] have been rejected under the traditionally created doctrine of obviousness-type double patenting based on claims 1 to 14 of the '046 patent in view of Lipman. The Examiner might be justified in taking notice of equivalence of wireless remote control and hardwired controls for achieving the same end result but that does not justify applying to *wholly different types of adjustment and particularly where the claims recite the separate horizontal and vertical drive means for tilting and rotating as well through 360° as the separate receiver channels coupled to the respective drive means to carry out two entirely different types of adjustments; namely, tilting and rotation* (emphasis added).

These statements can be reasonably interpreted as meaning that (1) in general, Lipman does not allow two types of adjustment (tilting and rotating) through separate receiver channels and drive means and, therefore, Lipman has a "wholly different type of adjustment" from that specified in pending claims 6 and 9–16; and (2) more specifically, Lipman is different from those *particular* claims (pending claims 6 and 9–15) that recite "separate horizontal and vertical drive means for tilting and rotating as well through 360°." In other words, the patentees' statements about Lipman's inability to rotate through 360° were made to distinguish only those claims that explicitly recited a 360° limitation. Claim 16, which issued as claim 11 now in dispute, has no such limitation. These statements therefore do not rise to the level of a clear disavowal of scope with respect to pending claim 16.

### C

Wal–Mart lastly argues that we must construe claim 11 as being limited to a search light that rotates through 360° because the claim limitation of a "horizontal drive means for rotating said lamp unit in a horizontal direction" is written in means-plus-function format. *See* 35 U.S.C. § 112, ¶ 6 (2000) ("An element in a claim for a combination may be expressed as a means or step for performing a specified function ... and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."). According to Wal–Mart, the only "horizontal drive means" disclosed by the '989 patent is one that rotates through 360°.

The first step in construing a means-plus-function claim limitation is to define the particular function of the claim limitation. *Budde v. Harley–Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed.Cir.2001). "The court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed.Cir.2002). Thus,

according to the language of claim 11, the function of the "horizontal drive means" is "rotating said lamp unit in a horizontal direction." Ordinary principles of claim construction govern interpretation of this claim language, see id., and, for all the reasons discussed in the preceding two sections, we construe this function according to its ordinary meaning as not requiring rotation through 360°.

The next step in construing a means-plus-function claim limitation is to look to the specification and identify the corresponding structure for that function. "Under this second step, 'structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.' " Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1210 (Fed.Cir.2003) (quoting B. Braun Med. Inc. v. Abbott Labs., 124 F.3d 1419, 1424 (Fed.Cir.1997)). The '989 patent describes the structure for rotating the lamp unit as follows:

> The drive motor 21 is mounted on a horizontal support plate 52 which is of semi-circular configuration and provided with spaced bolt holes 54 aligned with the bosses 50 on the inner wall of the lamp housing 12 to receive fasteners 56. A pinion 58 projects downwardly from an output shaft, not shown, on the drive motor 21 through an opening 59 in the support plate 52 for intermeshing engagement with the gear teeth 43. The support plate 52 is journaled with respect to the gear 42 and the top wall of the base, and the upper housing 12 includes a downwardly depending skirt 60 which encircles the upper end of the base 14.
>
> When the pinion 58 is rotated by the drive motor 21, it will cause the entire upper housing 12 to rotate with respect to the base support unit 14. It is highly desirable that the upper housing 12 be free to rotate greater than 360° with respect to the base support unit 14 and, to this end, a follower pin 64 includes an enlarged head 63 which projects downwardly from the upper housing through a circumferential slot 65 in the support plate 52 with the head 63 riding in the annular groove 44. When the drive motor 21 rotates the pinion 58 in one direction around the gear teeth 43, the head 63 will move into engagement with the stop 45 but the upper housing 12 and attached support plate 52 will be free to continue rotating, since the slot 65 can continue its advancement until the pin 64 reaches the end of the slot 65. Conversely, when the pinion 58 is rotated in the opposite direction, the support plate 52 and upper housing 12 will be free to rotate through substantially 360° until the pin 62 moves into engagement with the opposite side of the stop 45. Once again, however, the slot 62 will permit the support plate 52 and upper housing 12 to continue rotation with respect to the stop member 45 so that the upper housing 12 is free to rotate through greater than 360° in either direction.'

'989 patent, col. 3, l. 60—col. 4, l. 25. This assembly certainly performs the function of ordinary rotating, as stated by claim 11. While it also may be capable of rotating through 360°, we see nothing in the written description that compels limiting the function to only this degree of rotation, or to rotation through any particular angle at all. Moreover, to the extent the assembly contains particular structures for permitting rotation through 360°, such as the follower pin 64 and slot 65, these structures are superfluous to our claim construction analysis because they are not required for performing the claimed function. See Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1370 (Fed.Cir.2001) ("Structural features that do not actually

perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations."). Rotating the lamp unit in a horizontal direction can be accomplished through pinion 58, without the follower pin and slots. Thus, even under a means-plus-function analysis, we see no basis for importing a 360° limitation into claim 11.

## D

For all of the reasons discussed above, we construe the phrase "rotating said lamp unit in a horizontal direction," as used in claim 11 of the '989 patent, according to its ordinary meaning. The district court correctly determined that this claim language does not require the lamp unit to rotate through 360°.

## II. INFRINGEMENT

Wal–Mart does not dispute that its accused search light infringes claim 11 as construed by the district court. Given that we agree with the district court's claim construction, we affirm the finding of infringement.

## III. INVALIDITY

Wal–Mart argued at trial that claim 11 as construed by the district court is invalid as obvious. The district court disagreed, stating that "[w]hile the separate elements of Claim 11 all appear in various combinations in the prior art, Claim 11 is the first time all of the elements are combined."

1. The '989 patent describes two mechanisms for attaching the search light to the roof of a vehicle: a "shoe" shown in Fig. 6 or a "boot" shown in Figs. 3 and 4. The shoe is a component that locks into a base plate mounted to the vehicle, *see* '989 patent, col. 5, l. 48—col. 6, l. 20, whereas the boot is a suction cup with a crank, *see id.*, col. 5, ll. 28–47.

2. The '989 patent application was filed on September 16, 1994, as a continuation-in-part of application serial no. 201,551, filed on February 23, 1994. The 201,551 application is-

*Golight*, 216 F.Supp.2d at 1179. The district court concluded that claim 11 "would not have been obvious to one possessing ordinary skill in the art at the time of the invention, and [it] will therefore not upset the examiner's belabored determination that Claim 11 is valid as written." *Id.*

On appeal, Wal–Mart argues that the combination set forth in claim 11, without either a 360° limitation or a "shoe" limitation,[1] is obvious for the same reasons that the examiner made various rejections during prosecution of the '989 patent application and its co-pending parent application, the '046 patent application.[2] According to Wal–Mart, the claims of the '989 patent are not patentably distinct from the claims of the '046 patent, which issued only once the claims included either a 360° limitation or a shoe limitation. Because claim 11 does not have either of these limitations, Wal–Mart infers that it must be unpatentable over the prior art cited by the examiner. Wal–Mart does not clearly articulate a particular combination of references that renders claim 11 obvious, but it appears to rely on two combinations used by the examiner: the combination of the Allen, Merlo, and Montgomery references,[3] as well as obviousness-type double patenting based on the '046 patent claims in combination with the Lipman reference.[4]

"Obviousness is a legal conclusion based on the factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 86

sued as the '046 patent on February 6, 1996. In general, the '989 patent application added the idea of a wireless remote control to the invention described by the '046 patent.

3. In particular, the examiner relied on the following references: U.S. Patent No. 3,936,-670 ("Allen"), U.S. Patent No. 4,238,816 ("Merlo"), and U.S. Patent No. 4,779,168 ("Montgomery").

4. U.S. Patent No. 4,981,363 ("Lipman").

S.Ct. 684, 15 L.Ed.2d 545 (1966):(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of non-obviousness." *McNeil–PPC, Inc. v. L. Perrigo Co.,* 337 F.3d 1362, 1368 (Fed.Cir.2003). We review for clear error the district court's determination of the factual inquiries underlying obviousness, whereas we review *de novo* the legal conclusion of whether a claim is invalid as obvious. *Id.*

### A

■ The district court "considered the scope and content of the prior art as presented by defendants, including Allen, Sr., Merlo, and Montgomery" and concluded that while the separate limitations of claim 11 appeared in various combinations in the prior art, claim 11 was nevertheless not obvious. *Golight,* 216 F.Supp.2d at 1179. In making its determination, the district court noted that "Wal–Mart's expert did not testify, and Wal–Mart ultimately presented no evidence at trial to support its argument that [c]laim 11 is obvious in light of the prior art." *Id.* The district court therefore had no evidence outside of the prosecution history of a motivation to combine the Allen, Montgomery and Merlo references, or any other combination of references, whereas Golight presented testimony that there was nothing in these references suggesting their combination. Moreover, the applicant argued to the examiner that a rejection based on this combination of references was improper:

> The Examiner's reliance upon Allen, Sr., Montgomery further in view of Merlo is clearly piecemeal rejection based on collecting together elements from different patents but without a principal reference which broadly discloses all of the elements claimed.

The examiner subsequently discontinued this particular rejection of pending claim 16, indicating his agreement that the claim was not obvious based on the combination of Allen, Montgomery, and Merlo.

The lack of evidence of a motivation to combine is a critical defect in Wal–Mart's obviousness defense, because there must be "some suggestion, motivation, or teaching in the prior art whereby the person of ordinary skill would have selected the components that the inventor selected and use them to make the new device." *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1351 (Fed.Cir.1998). Based on the evidence available to the district court, and in the absence of any evidence to the contrary, the fact findings underlying the district court's decision are not clearly erroneous and we agree with the district court's conclusion that claim 11 would not have been obvious based on the combination of Allen, Montgomery and Merlo.

### B

Pending claim 16 was rejected under the judicially created doctrine of obviousness-type double patenting based on claims 1–14 of the '046 patent in view of Lipman. In making this rejection, the examiner took "Official Notice of the equivalence of wireless remote control and hard-wired controls for their use in the illumination art." The applicant then submitted a terminal disclaimer, disclaiming any patent term coverage extending beyond the expiration of the '046 patent. Wal–Mart infers from this disclaimer that issued claim 11 is not patentably distinct from the '046 patent claims and, because the patentees could not obtain allowance of a claim specifying a boot attachment during prosecution of the '046 patent, they should not be able to do so during prosecution of the '989 patent simply by adding the limitation of a wireless remote control.

Wal–Mart's argument ignores the fact that claim 11 recites more than a search

light having a boot attachment and any kind of wireless remote control. Rather, the particular wireless remote control required by claim 11 is

for controlling vertical and horizontal movement of said searchlight apparatus, said remote control means including a self-contained transmitter adapted to be carried by an operator of a motor vehicle wherein said drive means can be operated by wireless transmission both from within said vehicle and at remote distances from said vehicle without electrical connection between said drive means and said remote control means, and having an on/off switch and a four-way directional control switch, and a receiver mounted within said housing.

The applicant defended the patentability of claim 11 (pending claim 16) based on the combination of this particular wireless remote control with the claimed boot attachment:

Claim 16 emphasizes the combination of a wireless remote control means for controlling vertical and horizontal movement of the searchlight apparatus including a self-contained transmitter adapted to be carried by an operator of the motor vehicle both interiorly and exteriorly of the vehicle and having an on/off switch and a four-way directional control switch, and the receiver which is mounted within the housing and in further combination with attaching means on the base support member which includes a rubber boot on the base support member and actuating means engageable with the boot for drawing it into vacuum-tight relation to the surface.... Accordingly, there is lacking in any one of the references any teaching of the basic combination of a searchlight that can be removably mounted on a vehicle, remotely controlled from the interior o[r] exterior of the vehicle and stowed inside of the vehicle when not in use. Not only does this amount to

piecemeal rejection but it is submitted that the new and improved combination achieves a new and improved result in its ability to removably mount the apparatus on different surfaces while being able to adjustably control light movement in a horizontal and vertical direction as well as its on/off state from inside or outside the vehicle.

The examiner subsequently acknowledged that claim 16 was allowable without a terminal disclaimer (at least until the discovery of the Lipman reference) thus indicating that this claim was patentable over the art cited during prosecution of the '046 patent, even though this claim did not have a shoe or 360° limitation. When the examiner discovered Lipman shortly thereafter, leading to a new rejection for double patenting based on the combination of Lipman and the '046 patent claims, he used Lipman only for its teaching of "a wireless radio remote control joystick 126 for controlling lights 20 about multiple axes from a remote area." But the '046 patent is not prior art, *see Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1281–82 (Fed.Cir.1992), and this rejection was properly overcome by the applicant's filing of a terminal disclaimer.

We disagree with Wal–Mart that we should infer from this terminal disclaimer that the patentees conceded that they could not obtain any new claim unless it contained either a shoe limitation or a 360° limitation, as did the claims of the '046 patent. Rather, the patentees' arguments show that they believed the combination of a boot attachment with the particular wireless remote control means of claim 11 was unique—as indeed it was, because there is no evidence of particular prior art references that can be properly combined to show each of the limitations of this claim. We therefore agree with the district court's determination that claim 11 is not invalid for obviousness.

## V. REASONABLE ROYALTY

The district court assessed damages of $464,280 based on a reasonable royalty of $31.80 per infringing unit. *Golight*, 216 F.Supp.2d at 1184, 1188. We review the district court's damages decision for "an erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion." *Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1349 (Fed.Cir.1999). The methodology for calculating the amount of a reasonable royalty to be awarded is within the discretion of the district court, based upon its underlying factual findings and legal conclusions. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed.Cir.1991).

Wal–Mart argues that a $31.80 royalty is unreasonable as a matter of law because it would have left Wal–Mart selling the accused product well below cost. According to Wal–Mart, it could not have raised the price of its products to cover the cost of the royalty because it was already selling the products at a loss. Wal–Mart proposes that, at best, any royalty should be capped at $8.00 per unit, which was Wal–Mart's profit forecast for the product.

The evidence Wal–Mart relies on for its position is sparse, comprising a few pages of sales data, the testimony of one witness stating the cost of production of the Radio Ray device, and the following testimony of a Sam's Club manager:

> Q. And based on those conversations, what is your understanding of the kind of royalty that you as division merchandise manager at Sam's Club would be willing to pay for merchandise sold by Sam's Club covered by a claim of intellectual property of a vendor?
>
> [objection, overruled]
>
> THE WITNESS: 2 to 5 percent ... of the wholesale cost.

Wal–Mart also relies on the cross-examination testimony of Golight's expert, stating that in a different lawsuit involving car alarms and lost profit damages, he indicated that a 2.5% royalty might be appropriate, but that "there [were] a number of different circumstances in that case.... All sorts of differences in that case that I couldn't even imagine to try—try to bring this together right now." Wal–Mart presented no expert testimony of its own regarding a reasonable royalty. *Golight*, 216 F.Supp.2d at 1182. In contrast, Golight presented expert testimony regarding a hypothetical licensing negotiation, which would have resulted in a royalty rate of $31.80 per unit based on fifty percent of Golight's incremental profit. *Id.* at 1182–83.

Based on this evidence, we disagree with Wal–Mart that the district court's royalty determination is unreasonable. Golight is entitled to no less "than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2000). "There is no rule that a royalty be no higher than the infringer's net profit margin." *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed.Cir.1989); *see also Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed.Cir.1995) (en banc) (stating that "the fact that the award was based on and was a significant portion of the patentee's profits also does not make the award unreasonable"). Wal–Mart's evidence in this case establishes nothing more than what it might have preferred to pay, which is not the test for damages. *See Rite–Hite*, 56 F.3d at 1555. ("Moreover, what an infringer would prefer to pay is not the test for damages."). Nor has Wal–Mart identified any other sufficient evidence upon which we could conclude that the district court made any clearly erroneous findings of fact when making its calculation.

Because we conclude that the district court made no legal error and relied on no clearly erroneous findings of fact, we affirm the district court's determination of the reasonable royalty in this case.

## VI. WILLFUL INFRINGEMENT

■ The district court determined that Wal–Mart's infringement was willful based on Wal–Mart's failure to take any action after receiving a cease and desist letter. The district court also considered evidence that Wal–Mart's device was a deliberate copy of the Radio Ray. *Golight*, 216 F.Supp.2d at 1184–85. Wal–Mart argues that the district court's finding of willfulness is clearly erroneous because it is not supported by the evidence presented at trial. According to Wal–Mart, the evidence of deliberate copying by the manufacturer related to a different product. Wal–Mart also states that it presented undisputed evidence that no one at Wal–Mart had knowledge of the '989 patent until this lawsuit. Moreover, argues Wal–Mart, when it received a cease and desist letter, most of the allegedly infringing sales had already occurred and Wal–Mart sought assurances from the manufacturer that its products were not infringing. In response, Golight does not press the issue of deliberate copying, but instead argues that Wal–Mart's failure to take appropriate action upon receiving the cease and desist letter is sufficient to support a finding of willful infringement.

"When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement, which may be accompanied by enhanced damages." *Vulcan Eng'g Co. v. Fata Aluminium, Inc.,* 278 F.3d 1366, 1378 (Fed. Cir.2002). There is no admissible evidence in this case that Wal–Mart took appropriate action after receiving the cease and desist letter to establish a reasonable belief that its actions were not infringing the

'989 patent. While Wal–Mart argues that it obtained a letter from the manufacturer assuring that its products did not infringe, this letter was not admitted into evidence at trial and was rejected by the district court as "crudely drafted" and "cursory." *Golight*, 216 F.Supp.2d at 1185. Moreover, while Wal–Mart claims that most of its sales were made prior to receiving the cease and desist letter, there is evidence that Wal–Mart continued to sell off its remaining inventory even after it had learned of its possible infringement. Based on this evidence, the district court's finding of willful infringement was not clearly erroneous. Moreover, the district court's finding was made independent of any evidence (or lack thereof) of deliberate copying. The district court stated that "[a]lthough th[e] evidence of collaboration [to copy] is strong, it is not conclusive. However, clear and convincing evidence does demonstrate that Wal–Mart acted in disregard of the cease and desist letter, and in disregard of Golight's patent rights. Accordingly, the Court finds that the infringement was willful." *Id.* at 1186. We affirm this finding because, based on the evidence before the district court, it is not clearly erroneous.

## VII. ATTORNEY FEES

■ As a result of finding willful infringement, the district court awarded Golight its attorney fees, but did not enhance damages. The district court determined, "after careful review of all the facts and circumstances, and in view of the nine *Read[ v. Portec]* factors, which point in different directions" that Wal–Mart's conduct was not "so egregious as to warrant an award of exemplary damages." *Golight*, 216 F.Supp.2d at 1187. However, the court determined "that due to the willful nature of Wal–Mart's conduct this is an exceptional case" and that Golight was therefore entitled under 35 U.S.C. § 285 to

its attorney fees. *Id.* According to Wal–Mart, this award was an abuse of discretion because its conduct does not justify the imposition of such a penalty.

While a finding of willful infringement does not require a finding that a case is exceptional, *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1461 (Fed.Cir.1998) (en banc), "[o]ur cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1567 (Fed.Cir. 1988). Based on a finding of willful infringement, it is within the district court's discretion whether to award attorney fees under § 285. In essence, Wal–Mart argues the district court abused that discretion because "more egregious conduct than willful infringement is necessary to hold a case exceptional," an argument that we rejected in *Avia. See id.* Based on the record in this case, and the district court's reasoned analysis, we see no abuse of discretion and therefore affirm the award of attorney fees.

## CONCLUSION

Because we find no errors of law and no clearly erroneous findings of fact, we affirm the district court's rulings that Wal–Mart has willfully infringed claim 11 of the '989 patent, that claim 11 is not invalid for obviousness, and that Golight is entitled to damages of $464,280 based on a reasonable royalty of $31.80 per infringing unit, as well as its attorney fees. Thus, the judgment of the district court is

*AFFIRMED.*

1. I do, however, agree with the majority's

ARCHER, Senior Circuit Judge, dissenting in part.

I respectfully dissent from the majority's claim construction and resulting affirmance of the district court's finding of infringement, because I believe the claim language "horizontal drive means for rotating said lamp unit in a horizontal direction" requires the search light to be capable of rotating through 360°.[1] This means plus function claim limitation must be interpreted in light of structure provided in the specification. Here the specification only describes a single structure, one that shows only rotation through 360°. Additionally, the prosecution history and other statements in the specification fully support requiring rotation through 360°.

The claim limitation is indisputably written in means plus function form. The majority correctly identifies the function of the "horizontal drive means for rotating" as "rotating said lamp unit in a horizontal direction." Under 35 U.S.C. § 112 ¶ 6, a means plus function claim limitation "shall be construed to cover the corresponding structure described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6 (2000). The only structure identified in the '989 patent is one which rotates through 360°:

> When the pinion 58 is rotated by the drive motor 21, it will cause the entire upper housing 12 to rotate with respect to the base support unit 14. It is highly desirable that the upper housing 12 be free to rotate greater than 360° with respect to the base support unit 14 and, to this end, a follower pin 64 includes an enlarged head 63 which projects downwardly from the upper housing through a circumferential slot 65 in the support plate 52 with the head 63 riding in the annular groove 44. When the drive motor 21 rotates the pinion 58 in one di-

holding on validity.

rection around the gear teeth 43, the head 63 will move into engagement with the stop 45 but the upper housing 12 and attached support plate 52 will be free to continue rotating, since the slot 65 can continue its advancement until the pin 64 reaches the end of the slot 65. Conversely, when the pinion 58 is rotated in the opposite direction, the support plate 52 and upper housing 12 *will be free to rotate through substantially 360°* until the pin 62 moves into engagement with the opposite side of the stop 45. Once again, however, the slot 62 will permit the support plate 52 and upper housing 12 to continue rotation with respect to the stop member 45 so that the upper housing 12 *is free to rotate through greater than 360* in either direction.

'989 patent, col. 4, ll. 5–25. Because the only structure in the specification which describes the horizontal rotating means expressly states that it is "free to rotate through greater than 360° in either direction," only devices capable of rotating through 360° and their equivalents are covered by this claim limitation; a device incapable of rotating through 360° is not. The majority disagrees with this logical conclusion, ignoring that there is nothing in the specification that shows or refers to a structure that does not rotate through 360°. We cannot give a means plus function claim limitation a broader meaning than the structure shown in the specification or an equivalent thereof, yet this is precisely what the majority opinion does. *See Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580 (Fed.Cir.1989) ([S]ection 112 ¶ 6 does not, in any event, *expand* the scope of the claim. An element of a claim described as a means for performing a function, if read literally, would encompass *any* means for performing the function. But section 112 ¶ 6 operates to *cut back* on the types of *means* which could literally satisfy the claim language.) (citations omitted).

The majority asserts that "[w]hile [the horizontal rotating assembly] also may be capable of rotating through 360°, we see nothing in the written description that compels limiting the function to only this degree of rotation, or to rotation through any particular angle at all." Maj. op. at 1334. The majority views the elements of the rotating means assembly that permit rotation beyond 360° as not part of the corresponding structure because they do not actually perform the recited function of "rotating" the lamp in the horizontal direction. This conclusion hinges on the majority's view that "rotating" in the context of the '989 patent has no "special definition," implying that any amount of rotation is sufficient to satisfy the limitation's function of rotating the lamp unit in the horizontal direction. I disagree with this premise.

In response to an Office Action rejecting the claims in view of Lipman, the applicants stated that the Lipman device would be capable only of tilting in different directions about a single central axis. The applicants further explained "[c]learly, [the Lipman device] would not be rotatable so as to be able to sweep *through 360° or greater as achieved by applicants' invention.*" (emphasis added.) This statement illustrates the applicants' position the claimed invention was patentable in view of Lipman because the applicants' invention rotated through 360° and Lipman's device did not. Accordingly, the applicants defined "rotate" in the context of the '989 patent to require that the horizontal drive means for rotating be capable of rotation through 360°.

The majority notes other passages from the prosecution history which support the conclusion that the means for rotating as contemplated by the '989 patent must be capable of rotation through 360° but dismisses them, contending these statements

are open to another interpretation. While that may be technically correct, it is, in my view, a tortured reading of the prosecution history. More importantly, however, the majority has not expressly addressed the applicants' characterization of the invention (recited above) and the resulting definition of "rotate." This recited statement was made in describing the Lipman reference and its relation to the rotation of the claimed invention.

Thus, the majority's decision is premised upon an incorrect interpretation of the term "rotating" as used in the '989 patent. Under a proper interpretation of "rotating," 35 U.S.C. § 112, ¶ 6 requires the claim limitation to be construed so as to include only devices in which the means for rotating is capable of rotation through 360°.

In addition to 35 U.S.C. § 112, ¶ 6, the specification itself supports a construction of the claim limitation "horizontal drive means for rotating" wherein the means for rotating must be capable of rotating through 360°. When describing the background and field of the invention the applicants stated "in removably mounting the searchlight on a surface, it is *important* that the searchlight be securely installed and that *the searchlight be capable of traversing greater than 360°* . . . ." '989 patent, col. 1, ll. 41–44 (emphases added). Further, when describing their invention, the applicants explained

[a] searchlight apparatus *in accordance with the present invention* includes a lamp unit mounted in a housing which has a motor-driven vertical drive mechanism for tilting the lamp unit in a vertical direction and a motor-driven *horizontal drive mechanism for rotating the lamp unit in a horizontal direction through at least 360°*. Providing lamp *movement through at least 360° and preferably beyond* is particularly advan-

tageous in that it permits installation without regard to orientation.

'989 patent, col. 2, ll. 3–11 (emphases added). Such a characterization of the rotation of at least 360° as part of the "present invention" "is strong evidence that the claims should not be read to encompass the opposite structure." *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1343 (Fed.Cir.2001).

As illustrated above, the specification describes only a single means for rotating: one that rotates through 360°. Further, the specification described the advantages of rotating through at least 360° as "important" to the invention. Accordingly, it is proper to read the limitation "horizontal drive means for rotating" as requiring rotation through 360°. *See Toro Co. v. White Consolidated Indus., Inc.*, 199 F.3d 1295, 1300–01 (Fed.Cir.1999) (finding that where the specification and drawings showed a certain configuration and did not illustrate or describe any other structure and the specification described the advantages of the configuration as important to the invention, construing the claims as requiring that configuration was proper).

For these reasons, I would reverse the district court's claim construction and construe the claim element "horizontal drive means for rotating" as requiring rotation through at least 360°. Under such a construction Wal–Mart's device would not infringe the claim, as it indisputably does not rotate 360°. Further, a finding of noninfringement would obviate the need for analysis of the reasonable royalty and willful infringement issues.