NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1614

MOMENTUS GOLF, INC.,

Plaintiff-Appellant,

v.

SWINGRITE GOLF CORPORATION
(also known as Swingrite Corporation),

Defendant-Appellee,

and

GRIPS FORE GOLF and J & M GOLF, INC.,

Defendants.

_____

DECIDED: June 30, 2006

_____

Before SCHALL, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Senior Circuit Judge</u> ARCHER. Dissenting opinion filed by <u>Circuit Judge</u> SCHALL.

ARCHER, <u>Senior Circuit Judge</u>.

Momentus Golf, Inc. ("Momentus") appeals the judgment of the United States District Court for the Southern District of Iowa granting Swingrite Golf Corporation's ("Swingrite") motion for summary judgment. <u>Momentus Golf, Inc. v. Swingrite Golf Corp.</u>, No. 4:02-cv-40252 (S.D. Iowa Aug. 23, 2005). Because the district court erred in concluding that the prosecution history of U.S. Pat. No. 5,582,407 ("the '407 patent")

disclaimed any device having more than 10% club head weight, we <u>vacate</u> the court's judgment and <u>remand</u> for further proceedings.

I

The '407 patent is directed to a golf club swing aide. Relevant to this appeal, claim 1 of the '407 patent states:

> A golf swing trainer consisting essentially of a golf grip fixed about one end of a length of round stock which is solid through it[s] length and cross-section, sol[i]d round stock, said trainer having a center of gravity substantially centered at a midpoint of a longitudinal axis of said length of round stock, and the weight of said round stock being heavier than a typical golf club so that repeated swings of the trainer establishes a muscle memory of the path of the swing, breaking down the incorrect muscle memory and building the correct muscle memory of the path of the swing.

'407 patent, col. 5, ll. 4-13. Claim 9 adds the element of a "golf club head fixed to another end of said length of stock." <u>Id.</u> at col. 4, ll. 12-13.

Momentus sued Swingrite for infringement of the '407 patent.[1] When construing claim 1, the district court concluded that "during the prosecution of its claim, Momentus conceded that the center of gravity of a device with a club head weight of 10-25 percent would not be substantially centered at a midpoint of the shaft and therefore cannot meet the requirements of Momentus' claims." <u>Momentus Golf, Inc. v. Swingrite Golf Corp.</u>, 312 F. Supp. 2d. 1134, 1143 (S.D. Iowa 2004) ("Claim Construction Order"). Based on this perceived disclaimer and the fact that the "novel property of the Momentus trainer is that its center of gravity is substantially centered at the midpoint of its solid round shaft," <u>id.</u> at 1144, the district court "construe[d] the phrase 'consisting essentially of' in Claim 1 as excluding any element [that] if added to the device would constitute more than 10

---

[1] Grips Fore Golf and J & M Golf were named defendants in the originally filed suit. Neither party, however, participated in this appeal.

percent club head weight, because such an element would materially alter the novel property of the invention," id. at 1144.

Following the district court's claim construction ruling, Swingrite filed a motion for summary judgment of no infringement, which the district court granted. Momentus appeals, arguing that there was no prosecution disclaimer and that the district court erred by reading into the claim a requirement that the weight of the club head constitute less than ten percent of the device's weight. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II

We review the district court's grant of Swingrite's motion for summary judgment of no infringement de novo. Hilgrave Corp. v. McAfee Assocs., Inc., 2204 F.3d 1349, 1352 (Fed. Cir. 2000). Similarly, we review the district court's claim construction de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).

The issue in this case is whether, during the prosecution of the '407 patent, the applicant disclaimed devices having a club head weight of more than 10%. The purpose of the doctrine of prosecution disclaimer is to prevent a patentee from recapturing through claim interpretation meanings he disclaimed during prosecution. SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1286 (Fed. Cir. 2005) (citations omitted). Any such disclaimer must be clear and unmistakable. Id. (stating "[w]hen the patentee makes clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection, the courts limit the relevant claim term to exclude the disclaimed matter" (citing Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003))). We have explained, however, that "[t]here is no 'clear

and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." Id. at 1287 (citing Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1332 (Fed. Cir. 2004)); Cordis Corp. v. Medronic Ave, Inc., 339 F.3d 1352, 1359 (Fed. Cir. 2003) (finding no disclaimer because "the statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary meaning of the term [at issue]").

During prosecution of the '407 patent, the examiner initially rejected the claims as being anticipated by or obvious in view of U.S. Pat. No. 3,231,281 ("Wallo"). Wallo describes a golf club swing aide that "provide[s] effective and proper toning and strengthening of the body muscles while simultaneously and automatically guiding the body movements into proper coordination." Wallo at col. 1, ll. 31-36. It accomplishes this by using a "club" that is three to five times the weight of a standard golf club. Id. at col. 2, ll. 9- 10. Wallo's golf club swing aide is described as hollow, id. at col. 1, ll. 71-72, col. 2, line 37; however, the patent also explains that if the shaft and head are made of lighter material, "the proper weight may be provided by filling the hollow shaft and head with a material of appropriate density," id. at col. 2, ll. 36-39.

In responding to the examiner's rejection, the '407 applicant distinguished the claimed invention from Wallo:

> The shaft [in Wallo] is hollow. The overall weight of the trainer is such as to require a firmer grip, to strengthen the hands and to slow the swing. The down swing is resisted by the "excessive weight of the club." The trainer causes "toning and strengthening of the muscles by swinging the excessive weight." Unlike Wallo, applicant's trainer has a solid shaft, uses no club head and substantially 100% of the trainer weight is non club head weight. <u>A hollow device having 10-25% club head weight cannot meet the requirement in applicant's claims that the center of gravity of the trainer be</u>

> substantially at the center of a solid round stock.  Furthermore, as explained above, and as set forth in greater detail in claim 11 and in even greater detail in claim 12 of the present application, the claimed weighting of applicant's device is related to changing the memory and not the strength of the muscles involved in the swing and to changing the path of the swing due to balance rather than changing the speed of the swing due to weight.  Applicant therefore submits that applicant's present invention is neither anticipated by Wallo, which does not disclose the structure claimed by applicant, nor obvious over Wallo, which teaches an entirely different concept of golf swing training and is not applicable to the principles taught by applicant.

(key sentence in dispute emphasized).  Because the claimed invention could not be distinguished from Wallo solely on the grounds of being solid, the district court interpreted the underlined sentence above as identifying another distinction between the claimed invention and Wallo; namely, club head weight.  Based on this, the court viewed the statement as a "conce[ssion] that the device with a club head having 10-25 percent of its weight at the end of the shaft opposite the grip would fall outside the scope of the [claimed] trainer."  Claim Construction Order at 1143.  This reading is fathomable.  However, we agree with Momentus that this sentence is open to another interpretation:  the applicant was simply stating that a hollow club having 10-25% club head weight (a device described by Wallo) could not meet the claim limitation in the '407 patent that the club shaft have a center of gravity at the center of a solid shaft.  Such a reading does not suggest that all clubs having a 10-25% club head weight are outside the scope of the invention; rather, only hollow clubs with such a characteristic fall outside the scope of the claims.

Interpreting the prosecution history in this manner does not affect the applicant's argument that the claimed invention was not anticipated by, or obvious in view of, Wallo.  The applicant of the '407 patent distinguished the claimed invention from Wallo on

grounds other than "solidness"; namely, that the two devices functioned in totally different ways. Specifically, the applicant noted that the claimed invention worked by changing the user's muscle memory and the path of the user's swing due to balance while the Wallo device worked by strengthening the user's muscles and changing the speed of the user's swing due to weight. The examiner recognized this as the distinguishing feature of the claimed invention. Thus, in an examiner's amendment prior to allowance, the examiner added language to the claim to reflect this distinction; namely, "and the weight of said round stock being heavier than a typical golf club so that repeated swings of the trainer establishes a muscle memory of the path of the swing, breaking down the incorrect muscle memory and building the correct muscle memory of the path of the swing."

We conclude that the statement in the prosecution history that "[a] hollow device having 10-25% club head weight cannot meet the requirement in applicant's claims that the center of gravity of the trainer be substantially at the center of a solid round stock," (emphasis added), is open to more than one reasonable interpretation. Thus the statement was not a clear and unmistakable disclaimer of all devices having 10-25% club head weight. See SanDisk, 415 F.3d at 1287; Cordis, 339 F.3d at 1359. At most it disclaims hollow devices having 10-25% club head weight.

Accordingly, the district court erred in its claim construction to the extent it determined that all devices having 10-25% club head weight fall outside of the scope of the claims of the '407 patent. Therefore, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1614

MOMENTUS GOLF, INC.,

Plaintiff-Appellant,

v.

SWINGRITE GOLF CORPORATION
(also known as Swingrite Corporation),

Defendant-Appellee,

and

GRIPS FORE GOLF and J & M GOLF, INC.,

Defendants.

SCHALL, Circuit Judge, dissenting.

I would affirm the grant of summary judgment of non-infringement.  In my view, the district court correctly held that, during prosecution of the application that resulted in U.S. Patent No. 5,582,407 ("the '407 patent"), the inventor disclaimed golf swing trainers having more than 10% club head weight.

Claim 1 of the '407 patent describes a golf swing trainer with a shaft of "sol[i]d round stock, said trainer having a center of gravity substantially centered at a midpoint of a longitudinal axis of said length of round stock."  '407 patent, col. 5, ll. 6-8.  Claim 1

was rejected during prosecution as anticipated or obvious in view of U.S. Patent No. 3,231,281 ("the Wallo patent"). The inventor responded to the rejection by distinguishing the golf swing trainer disclosed by the Wallo patent as follows:

> In Wallo, from 75 to 90% of the weight of the trainer is in the shaft, resulting in from 10 to 25% of the weight being in the head of the trainer (col 2, lines 18-24). The shaft is hollow (col 2, lines 25-40). The overall weight of the trainer is such as to require a firmer grip, to strengthen the hands and to slow the swing (col 2, lines 41-49). The down swing is resisted by the "excessive weight of the club" (col. 2, lines 58-59). The trainer causes "toning and strengthening of the muscles by swinging the excessive weight" (col. 2, lines 69-70). Unlike Wallo, applicant's trainer has a solid shaft, uses no club head and substantially 100% of the trainer weight is non club head weight. <u>A hollow device having 10-25% club head weight cannot meet the requirement in applicant's claims that the center of gravity of the trainer be substantially at the center of a solid round stock.</u> Furthermore, as explained above, and as set forth in greater detail in claim 11 and in even greater detail in claim 12 of the present application, the claimed weighting of applicant's device is related to changing the memory and not the strength of the muscles involved in the swing and to changing the path of the swing due to balance rather than changing the speed of the swing due to weight. Applicant therefore submits that applicant's present invention is neither anticipated by Wallo, which does not disclose the structure claimed by applicant, nor obvious over Wallo, which teaches an entirely different concept of golf swing training and is not applicable to the principles taught by applicant.

(emphasis added). Based on the above passage, the district court found that the inventor disclaimed trainers with a club head weight between 10-25% of the weight of the trainer because those trainers would not have a center of gravity substantially centered at the midpoint of the trainer's shaft. <u>Momentus Golf, Inc. v. Swingrite Golf Corp.</u>, 312 F. Supp. 2d 1134, 1143 (S.D. Iowa 2004).

The majority concludes, however, that the above-quoted passage does not comprise a "clear and unmistakable disclaimer" of devices having 10-25% club head weight because the underlined portion of the passage can reasonably be interpreted as disclaiming golf swing trainers with a hollow shaft instead of disclaiming golf swing trainers with 10-25% club head weight. Majority Op. at 5-6. I am unable to read the passage as the majority reads it.

I read the underlined sentence of the passage as clearly and unmistakably disclaiming both (i) a device having 10-25% club head weight and also (ii) a device having a hollow shaft. The underlined sentence states, "A <u>hollow</u> device having <u>10-25% club head weight</u> cannot meet the requirement in applicant's claims that the <u>center of gravity of the trainer be substantially at the center</u> of a <u>solid</u> round stock." (emphases added). The Wallo device differs, according to this key sentence, because it is (i) hollow rather than solid and (ii) has 10-25% club head weight as opposed to a center of gravity substantially at the center of the shaft. The remainder of the passage, it seems to me, confirms that the underlined sentence is making two distinct disclaimers. In the first sentence of the passage, the inventor sets forth the framework for the club head weight disclaimer by noting that the Wallo device has 10-25% of its weight in the club head. In the second sentence, the inventor states that the Wallo device has a hollow shaft. Thus, the inventor sets forth these two features of the Wallo device separately. The inventor then states that "[u]nlike Wallo, applicant's trainer has a <u>solid shaft</u>, uses no club head <u>and</u> <u>substantially 100% of the trainer weight is non club head weight</u>." (emphases added). Again, the composition of the shaft and the club head weight are set forth as separate features by the inventor. Thus, in my view, the key sentence and

the surrounding passage clearly and unmistakably disclaim both devices with a hollow shaft and devices with 10-25% club head weight. I think that this is the only reasonable interpretation of the above passage. In short, I agree with the district court's construction of "substantially centered," which limited claim 1 of the '407 patent to devices with less than 10% club head weight. I would thus affirm the grant of summary judgment of non-infringement. I therefore respectfully dissent.