Dissenting opinion filed by Circuit Judge Newman.
Dyk, Circuit Judge *1237 Sony Corp. is the owner of U.S. Patent No. 6,097,676 ("the '676 patent"). It appeals the Patent Trial and Appeal Board's ("Board's") final decision in IPR No. 2016-00834. The Board found claims 5 and 8 of the '676 patent unpatentable as obvious. We vacate and remand.
BACKGROUND
The '676 patent is directed to "an information recording medium" (e.g., a compact disk, video disk, or magneto-optical disk) that can store audio data having multiple channels and "a reproducing device" that can select which channel to play based on a default code or value stored in nonvolatile memory. '676 patent, Abstract; id. col. 1, ll. 11-15. The specification states that the reproducing device is provided with "storing means" for storing the audio information (e.g., audio data recorded in different languages), "reading means" for reading codes associated with the audio information (e.g., 0, 1, 2, and 3 for English, French, German, and Japanese, respectively), and "reproducing means" for reproducing the audio information based on the default code or value. Id. col. 3, ll. 4-11.
The specification gives the example of a device manufactured to record and store audio data (e.g., of a movie) in multiple different languages for various countries. Id. col. 3, ll. 36-42; id. col. 10, l. 60-col. 11, l. 9. A single device can be manufactured for use in any of those countries "provided that the default [value (e.g., 0, 1, 2, or 3) ] is ... changed and set for every destination country." Id. col. 3, ll. 36-42.
Claim 5 of the '676 patent recites:
5. An information reproducing device for reproducing an information recording medium in which audio data of plural channels are multiplexedly recorded, the information reproducing device comprising:
storing means for storing a default value for designating one of the plural channels to be reproduced; and
reproducing means for reproducing the audio data of the channel designated by the default value stored in the storing means; and
wherein a plurality of voice data, each voice data having similar contents translated into different languages are multiplexedly recorded as audio data of plural channels; and a default value for designating the voice data corresponding to one of the different languages is stored in the storing means.
Id. col. 12, ll. 28-43. Claim 8 recites the same limitations as claim 5 and additionally recites that "codes representing the kinds of the audio data" are multiplexedly recorded in the information recording medium, that the information reproducing device includes "reading means" for reading the codes, and that the reproducing means is for reproducing the audio data "according *1238 to the codes read by the reading means." Id. col. 13, ll. 1-21.
The Board instituted inter partes review as to claims 5 and 8 of the '676 patent. The primary focus during inter partes review was whether the "reproducing means" limitation was computer-implemented and required an algorithm.
On September 28, 2017, the Board issued a final decision finding the claims unpatentable as obvious over U.S. Patent No. 5,130,816 to Yoshio ("Yoshio"). The Board construed the "reproducing means" limitation as a means-plus-function limitation. The Board explained that the recited function is "reproducing the audio data of the channel designated by the default value stored in the storing means." Arris Int'l PLC v. Sony Corp. , IPR2016-00834, 2017 WL 4349410, at *4 (P.T.A.B. Sept. 28, 2017). The Board determined that the structure that performs these functions is "a controller and a synthesizer, or the equivalent." Id. at *12. The Board further concluded that the limitation is not computer-implemented and does not require an algorithm because "synthesizer 11 and controller 13 both are shown and described in the '676 patent as discrete hardware elements." Id. at *5, 9.
The Board found that Yoshio taught most of the limitations of claims 5 and 8 and that the claims would have been obvious over Yoshio. Yoshio is directed to "a method and apparatus of recording and reproducing information, in which a plurality of audio signals corresponding to speech in a plurality of languages can be recorded on a recording medium" (e.g., a video disc or a digital audio disc) and in which "an audio signal corresponding to the speech in a desired language can be obtained from among the plurality of audio signals recorded on the recording medium." Yoshio, col. 1, ll. 43-50. Yoshio taught that audio signals of five channels (e.g., CH1, CH2, CH3, CH4, and CH5 for sound effects, Japanese, English, Chinese, and Korean, respectively) can be recorded. Yoshio further disclosed a computer-implemented "system controller" that detects whether a channel has been designated and supplies data indicating the designated channel, or data indicating a pre-determined channel if no channel was designated, to an ADPCM decoder and graphics decoder to select the channel. Based on the channel designated, the audio track in the corresponding language is played.
Sony appeals. Petitioners have elected not to participate in the appeal, and the Director of the U.S. Patent and Trademark Office intervened to defend the Board's decision. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).[1]
*1239 DISCUSSION
We review the Board's legal conclusions de novo and its factual findings for substantial evidence. Redline Detection, LLC v. Star Envirotech, Inc. , 811 F.3d 435, 449 (Fed. Cir. 2015). We review the ultimate question of the proper construction of a patent de novo, with any underlying fact findings reviewed for substantial evidence. In re Cuozzo Speed Techs., LLC , 793 F.3d 1268, 1280 (Fed. Cir. 2015). The '676 patent expired in August 2017. During inter partes review proceedings, claims of an expired patent are construed using the framework set forth in Phillips v. AWH Corp. , 415 F.3d 1303 (Fed. Cir. 2005) (en banc). Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc. , 853 F.3d 1272, 1279 (Fed. Cir. 2017).
Sony's primary argument on appeal is that the Board erred in construing the "reproducing means" limitation. Claims 5 and 8 both recite, in pertinent part, "reproducing means for reproducing the audio data of the channel designated by the default value stored in the storing means." '676 patent, col. 12, ll. 28-43 (emphasis added); id. col. 13, ll. 11-21. There is no dispute that the "reproducing means" limitation is a means-plus-function limitation, invoking 35 U.S.C. § 112 ¶ 6.[2]
The first step in construing a means-plus-function claim limitation is to determine the function of the limitation. Golight, Inc. v. Wal-Mart Stores, Inc. , 355 F.3d 1327, 1333 (Fed. Cir. 2004). Here, Sony and the Director agree that the function performed by the reproducing means is "reproducing the audio data of the channel designated by the default value stored in the storing means."
After identifying the function of the means-plus-function claim limitation, the next step is to determine the corresponding structure disclosed in the specification. Id. at 1334. "Under this second step, structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." Id. (quoting Med. Instrumentation & Diagnostics Corp. v. Elekta AB , 344 F.3d 1205, 1210 (Fed. Cir. 2003) ).
"In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, this court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech. , 521 F.3d 1328, 1333 (Fed. Cir. 2008). For means-plus-function claims "in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm," we have held that "the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." WMS Gaming, Inc. v. Int'l Game Tech. , 184 F.3d 1339, 1349 (Fed. Cir. 1999).
*1240 Before the Board, Sony's primary argument was that the "reproducing means" limitation is implemented on a computer and thus, under our precedent, requires an algorithm to carry out the claimed function. The Board disagreed and held that the limitation is implemented in hardware and accordingly does not require an algorithm. Specifically, the Board concluded that the corresponding structure of the reproducing means is "a controller and a synthesizer, or the equivalent." Arris , 2017 WL 4349410, at *12. The Board further explained that "[a]lthough the specification of the '676 patent includes steps that could be termed an algorithm and that could be implemented on a computer, we agree with Petitioner that does not mean that the controller is 'computer-implemented' or require that the construction must include the algorithm." Id. at *10.
Although the parties appear to agree on appeal that the specification contemplates a hardware-implementation of the reproducing means, we think Sony's original position was correct. We are not bound by the parties' arguments as to claim construction. See Exxon Chem. Patents, Inc. v. Lubrizol Corp. , 64 F.3d 1553, 1555-58 (Fed. Cir. 1995) ("[T]he [court] has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties.").
On its face, the '676 patent refers to a computer-implementation of the reproducing means. The specification states that the "reproducing means comprises a synthesizer 11 and a controller 13." '676 patent, col. 3, ll. 18-19. The specification further explains that "[i]n reproducing such a recording medium by using the reproducing device of the present invention, the processing as shown in FIG. 16 is executed." Id. col. 11, ll. 10-12 (emphasis added). Figure 16, in turn, discloses an algorithm in the form of a flowchart.
If the controller of the reproducing means were implemented in hardware, we would expect the patent to describe or refer to the circuitry of the controller that would be required for a hardware controller to perform the claimed function. The '676 patent does not do so. Therefore, despite testimony of petitioners' expert that a person of ordinary skill in the art would understand that the controller of the reproducing means "need not necessarily be computer-implemented" and "is more likely implemented in hardware," J.A. 1261-64, we think that the reproducing means is necessarily construed as computer-implemented based on the specification.
Since we conclude that the reproducing means limitation is computer-implemented, the corresponding structure must include an algorithm. See WMS Gaming , 184 F.3d at 1349. The specification describes the flowchart algorithm of Figure 16 as follows:
In reproducing such a recording medium by using the reproducing device of the present invention, the processing as shown in FIG. 16 is executed. First, reproduction of a desired track is commanded through the digitizer 17 (step S31). For instance, when reproduction of the track #3 is commanded, the controller 13 controls the drive 2 to start reproduction of the track 3. The start of reproduction is awaited (step S32). If the reproduction is started, the controller 13 reads the track header from the output from the decoder 4 and reads the number of multiplex sound and language data (step S33). Further, the controller 13 reads default language data from the nonvolatile memory 16 (step S34), and determines whether or not the multiplex audio data contains audio data according with the default language data (step *1241 S35). If the audio data accords with the default language data, the controller 13 controls the synthesizer 11 to select the audio data according with the default language data (step S36). If the multiplex audio data does not contain the audio data according with the default language data, the controller 13 controls the synthesizer 11 to select audio data located at the first position in the multiplex audio data (step S37).
'676 patent, col. 11, ll. 10-32.
The '676 patent specification clearly links the function of the "reproducing means" to the algorithm flowchart of Figure 16. The specification explains that "[i]n reproducing such a recording medium by using the reproducing device of the present invention , the processing as shown in FIG. 16 is executed." Id. col. 11, ll. 10-12. "When a patent ... describes the features of the 'present invention' as a whole," as it does here, "this description limits the scope of the invention." Verizon Servs. Corp. v. Vonage Holdings Corp. , 503 F.3d 1295, 1308 (Fed. Cir. 2007). Indeed, petitioners' expert relied on the algorithm disclosed in the '676 patent in describing how the controller performs the function of the reproducing means.
We conclude that the "reproducing means" limitation of claims 5 and 8 of the '676 patent is more appropriately construed as computer-implemented, and that the corresponding structure is a synthesizer and controller that performs the algorithm disclosed in the specification. The Board did not reach the question of whether Yoshio, which is computer-implemented, disclosed the algorithm of the '676 patent or the equivalent. Accordingly, we vacate the Board's decision and remand for further consideration of whether Yoshio discloses a synthesizer and controller that performs the algorithm disclosed in the specification, or the equivalent, and whether the challenged claims would have been obvious over Yoshio.
VACATED AND REMANDED
COSTS
No costs.

The dissent urges that there is no longer "a live case or controversy sufficient to satisfy Article III" because the '676 patent expired in August 2017, petitioners have elected not to participate in the appeal, and the parties have settled the district court infringement suit involving the '676 patent. Dissent Op. at 1241.
The parties to this appeal remain adverse, and no party has suggested the lack of an Article III case or controversy. The Director argues that the Board's decision finding claims 5 and 8 of the '676 patent unpatentable should be affirmed (which would result in "the Director ... issu[ing] and publish[ing] a certificate canceling [the] claim[s]," 35 U.S.C. § 318(b) ). Sony argues that the Board's decision should be reversed and the claims should be found patentable. This presents an Article III controversy.
Even if the existence of a potential infringement suit were relevant, there has been no showing that such a controversy does not exist, as would be required for mootness. See Cardinal Chem. Co. v. Morton Int'l, Inc. , 508 U.S. 83, 98, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). It is well-established that our decision (and the Board's decision on remand) would have a consequence on any infringement that occurred during the life of the '676 patent. See Genetics Inst. v. Novartis Vaccines , 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286."); see also Keranos, LLC v. Silicon Storage Tech., Inc. , 797 F.3d 1025, 1033 (Fed. Cir. 2015) (Although "the patentee has fewer rights to transfer when the patent has expired," the owner of an expired patent can license the rights or transfer title to an expired patent.); Mars, Inc. v. Coin Acceptors, Inc. , 527 F.3d 1359, 1372 (Fed. Cir. 2008) ("Title to ... an expired patent ... includes more than merely the right to recover damages for past infringement.").

Because the application that led to the '676 patent was filed before March 16, 2013, pre-AIA 35 U.S.C. § 112 applies here.